Shannon Anderson, Wyo. Bar No. 6-4402
Powder River Basin Resource Council
934 N. Main St.
Sheridan, WY 82801
(307) 672-5809
sanderson@powderriverbasin.org

*Additional counsel listed in signature block.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| WESTERN ENERGY ALLIANCE and PETROLEUM ASSOCIATION OF WYOMING, </br></br>　　　　　Petitioners, </br></br>　vs. </br></br></br>DEB HAALAND, in her official capacity as Secretary of the Interior, and UNITED STATES BUREAU OF LAND MANAGEMENT, </br></br>　　　　　Federal Respondents, </br></br>CENTER FOR BIOLOGICAL DIVERSITY, CITIZENS FOR A HEALTHY COMMUNITY, DINÉ CITIZENS AGAINST RUINING OUR ENVIRONMENT, FOOD & WATER WATCH, FRIENDS OF THE EARTH, MONTANA ENVIRONMENTAL INFORMATION CENTER, NATIONAL PARKS CONSERVATION ASSOCIATION, POWDER RIVER BASIN RESOURCE COUNCIL, SIERRA CLUB, SOUTHERN UTAH WILDERNESS ALLIANCE, THE WILDERNESS SOCIETY, VALLEY ORGANIC GROWERS ASSOCIATION, WESTERN COLORADO ALLIANCE, WESTERN ORGANIZATION OF RESOURCE COUNCILS, WESTERN WATERSHEDS PROJECT, WILDEARTH GUARDIANS, and WILDERNESS WORKSHOP, </br></br>　　　　　Proposed Intervenor-Respondents. | Case No. 1:23-cv-00001-SWS |

**CONSERVATION GROUPS' UNOPPOSED MOTION TO INTERVENE**

## INTRODUCTION

This Court recently resolved a matter very much like this one. In *Western Energy Alliance v. Biden* (the "2021 Case"), the State of Wyoming, Western Energy Alliance ("WEA"), and the Petroleum Association of Wyoming ("PAW") challenged the federal government's well-established legal authority to determine the scope and timing of oil and gas leasing on federal public lands and sought an order requiring more oil and gas lease sales. No. 21-cv-00013-SWS (D. Wyo. filed Jan. 27, 2021), *consolidated with Wyoming v. U.S. Dep't of Interior*, No. 21-cv-00056 (D. Wyo. filed Mar. 24, 2021). In that case, the Court granted intervention to the Center for Biological Diversity, *et al.*, who sought to protect their interests in safeguarding public lands and the climate from the impacts of the expanded oil and gas leasing the petitioners sought. ECF 22 in No. 21-cv-00013, Conservation Groups' Mot. Interv. (Apr. 19, 2021); ECF 43 in No. 21-cv-00013, Order Granting Mots. Interv. (May 12, 2021) ("2021 MTI Order"). On the merits, the Court ruled against Wyoming, WEA, and PAW and held that the Bureau of Land Management ("BLM") followed the law when it postponed lease sales in the first quarter of 2021. ECF 115 in No. 21-cv-00013, Order Upholding Agency Action on Judicial Review (Sept. 2, 2022) ("2021 Merits Order").

WEA and PAW (collectively, "WEA") now seek to revive their challenge by targeting a different set of lease sales, and the Conservation Groups again hereby move for intervention to protect their same interests. As in the prior case, the relief WEA seeks may impair the Conservation Groups' interests, which are not adequately represented by any existing party.

Pursuant to Local Rule 7.1(b)(1)(A), counsel for the Conservation Groups conferred with attorneys for WEA and Federal Respondents. Both WEA and Federal Respondents state they take no position on the motion.

## BACKGROUND

For decades, the BLM has exercised the broad discretion granted to it under the Mineral Leasing Act ("MLA") in its management of federal oil and gas leasing. It chooses whether, when, where, and how much to lease, based on a variety of considerations. Over the years, it has been commonplace for BLM to choose not to offer leases in a given region or time period. For example, BLM canceled or postponed at least 19 lease sales from 2015 to 2020 in the six Western states with the most oil and gas production, including all sales from April to June 2020. ECF 50-1 in No. 21-cv-00013, Decl. of Thomas Delehanty ¶ 3 & Attach. 1.

This discretion is a vital tool for BLM to uphold its statutory land management and stewardship duties. BLM is charged with managing public lands in a manner that (among other, sometimes-competing goals) provides "food and habitat for fish and wildlife and domestic animals" along with "outdoor recreation and human occupancy and use." 43 U.S.C. § 1701(a)(8). It must also account for "the long-term needs of future generations," *id.* § 1702(c), manage public resources "on the basis of multiple use and sustained yield," *id.* § 1701(a)(7), and "take any action necessary to prevent unnecessary or undue degradation of the lands," *id.* § 1732(b). Oil and gas leasing and development is often at odds with these imperatives. BLM must also account under NEPA for a variety of environmental impacts from development on leases it sells, including federal fossil fuel development's significant contribution to global climate change, *e.g.*, *WildEarth Guardians v. Bernhardt*, 502 F. Supp. 3d 237, 247 (D.D.C. 2020), which is expected to impact nearly all of the lands and resources BLM manages.[1]

---

[1] Elaine Brice et al., *Impacts of Climate Change on Multiple Use Management of Bureau of Land Management Land in the Intermountain West, USA*, 11 Ecosphere, at 13 (Nov. 10, 2020), https://esajournals.onlinelibrary.wiley.com/doi/epdf/10.1002/ecs2.3286.

Furthermore, many of BLM's rules and regulations are outdated and ineffective.[2] BLM's control over the scope and timing of leasing—including, as appropriate, delaying leasing—is thus a critical tool to accomplishing its statutory obligations.

Recognizing this, President Biden on January 27, 2021, directed the Secretary of the Interior to temporarily "pause" new oil and gas leasing. Exec. Order No. 14008 § 208, 86 Fed. Reg. 7619, 7624–25 (Jan. 27, 2021). The purpose was to allow the federal government to undertake a systematic review and modernization of its oil and gas program. *Id.*

A flurry of litigation ensued. In the 2021 Case and at least three others, states and oil and gas industry trade groups challenged the executive order and the postponement or cancellation of several 2021 onshore and offshore lease sales. *Louisiana v. Biden*, No. 21-cv-00778 (W.D. La. filed Mar. 24, 2021); *North Dakota v. U.S. Dep't of Interior*, No. 21-cv-00148 (D.N.D. filed July 7, 2021); *Am. Petroleum Inst. v. U.S. Dep't of Interior*, No. 21-cv-02506 (W.D. La. filed Aug. 16, 2021). Notably, no court in those many cases found that BLM lacks discretion to determine the scope and timing of leasing. In particular, this Court noted that the Department of the Interior and BLM have "wide discretion when it comes to determining which federal lands will be offered for oil and gas development" and determined that the Secretary of

---

[2] *See, e.g.*, U.S. Dep't of Interior, *Report on the Federal Oil and Gas Leasing Program* (Nov. 2021), https://www.doi.gov/sites/doi.gov/files/report-on-the-federal-oil-and-gas-leasing-program-doi-eo-14008.pdf; GAO, *Oil and Gas: Bureau of Land Management Should Address Risks from Insufficient Bonds to Reclaim Wells*, GAO-19-615 (Sept. 18, 2019), https://www.gao.gov/products/gao-19-615 (criticizing insufficient reclamation bonding); GAO, *Oil and Gas Development: Actions Needed to Improve Oversight of the Inspection and Enforcement Program*, GAO-19-7 (Feb. 14, 2019), https://www.gao.gov/products/gao-19-7 (poor regulatory oversight and enforcement); GAO, *Oil and Gas Lease Management: BLM Could Improve Oversight of Lease Suspensions with Better Data and Monitoring Procedures*, GAO-18-411 (June 4, 2018), https://www.gao.gov/products/gao-18-411 (abuse of lease suspensions).

the Interior "was within her discretion to determine, pre-sale, that the [2021] first-quarter sales should be postponed." 2021 Merits Order, at 20–21.

BLM is currently holding lease sales. In June 2022, it held five lease sales across eight states—including offering over 100,000 acres of public minerals in Wyoming. And it is currently planning several lease sales in Wyoming and other states for the second, third, and fourth quarters of 2023, with nearly half a million acres being considered for leasing.[3]

Nonetheless, WEA has sued yet again, taking issue with "[t]he way BLM is presently scheduling and administering onshore oil and gas lease sales." ECF 1, Petition for Review ¶ 84 (Jan. 3, 2023). It asks the Court to declare that BLM's decision not to hold a lease sale "in the fourth quarter of 2022" was unlawful and order BLM to "adopt promptly revised lease sale schedules." *Id.* at 19–20. WEA's requested relief flies in the face of the plain language of the MLA and decades of BLM practice, and it would impair the Conservation Groups' interests.

## ARGUMENT

**I.     The Conservation Groups Are Entitled to Intervene as of Right.**

A movant is entitled to intervene as of right if: (1) the motion to intervene is timely; (2) the movant claims an interest in the property or transaction that is the subject of the action; (3) the movant's interest "may as a practical matter" be impaired or impeded by the litigation; and (4) the movant's interest is not adequately represented by existing parties. Fed. R. Civ. P. 24(a). The Tenth Circuit follows "a somewhat liberal line in allowing intervention," *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010), where the principal focus

---

[3] *See* U.S. Bureau of Land Mgmt., *State Oil and Gas Lease Sales*, https://www.blm.gov/programs/energy-and-minerals/oil-and-gas/leasing/regional-lease-sales (providing links to each proposed lease sale's planning page).

4

is on "the practical effect of litigation on a prospective intervenor rather than on legal technicalities," *San Juan Cnty. v. United States*, 503 F.3d 1163, 1188 (10th Cir. 2007) (en banc).

Just as they did in the 2021 Case, the Conservation Groups satisfy each of the Rule 24(a) requirements and are entitled to intervene in this action as of right. *See* 2021 MTI Order, at 3–4.

### A. The Motion to Intervene Is Timely.

Rule 24(a)'s "timeliness" requirement focuses on prejudice to existing parties resulting from the passage of time between the initiation of the litigation and the motion to intervene. *See Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250–51 (10th Cir. 2001). Where no prejudice would result, intervention is favored. *Id.*

Here, WEA filed its operative petition on January 3, 2023, ECF 1, and Federal Respondents first appeared on January 25, 2023, ECF 5. As in the 2021 Case, the Conservation Groups' intervention at this early stage, where "no scheduling order has been issued, no trial date set, and no cut-off date for motions set," would not prejudice any existing party and is clearly timely. *Utah Ass'n of Cntys.*, 255 F.3d at 1251; *see* 2021 MTI Order at 3.

### B. The Conservation Groups Have an Interest in the Subject Matter of this Litigation.

Regarding Rule 24(a)'s interest requirement, courts apply "practical judgment" to determine "whether the strength of the interest and the potential risk of injury to that interest justify intervention." *San Juan Cnty.*, 503 F.3d at 1199. However, the Tenth Circuit has "declared it indisputable that a prospective intervenor's environmental concern is a legally protectable interest." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1165 (10th Cir. 2017) ("*WEA v. Zinke*") (quoting *WildEarth Guardians*, 604 F.3d at 1198). For example, the Tenth Circuit ruled that environmental groups, including many of the Conservation Groups here, were entitled to intervene when WEA sought to "increase[e] oil and gas development on public lands" by

"alter[ing] the BLM's leasing practices" because those groups had protectable interests in "minimizing the environmental impact of oil and gas development on public lands" and "preserving [leasing] reforms they had worked to implement." *Id.*

The same is true here. The Conservation Groups have protectable "environmental concern," *id.*, for the public lands they use and enjoy that are impacted by oil and gas leasing and development.[4] As just one example, a Conservation Group member frequently visits a proposed wilderness area in Wyoming's Red Desert known as Adobe Town, including camping and hiking on lands BLM recently proposed for leasing.[5] The Conservation Groups regularly advocate for these interests by encouraging BLM to limit oil and gas leasing, including by canceling or postponing lease sales or parcels.[6] The Conservation Groups' interests, combined with their demonstrated "record of advocacy" for those interests, satisfy this element of Rule 24. *WEA v. Zinke*, 877 F.3d at 1165; *see also Coal. of Ariz./N.M Cntys. for Stable Econ. Growth v. U.S. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) ("*Coalition*"); 2021 MTI Order, at 3.

---

[4] Ex. 1: Decl. of Hallie Templeton ¶¶ 4–7; Decl. of Tracy Coppola ¶¶ 9–15; Decl. of Matt Kirby ¶¶ 4–15; Decl. of Ray Bloxham ¶¶ 2–17; Decl. of Julia Stuble ¶¶ 5–15, 19–22; Decl. of Jana Weber ¶¶ 4, 6–7; Decl. of Mark Waltermire ¶¶ 4, 8; Decl. of Brian Williams ¶¶ 4–7; Decl. of Erik Molvar ¶¶ 3–18; Decl. of Peter Hart ¶¶ 4–12; Decl. of Connie Wilburt ¶¶ 6–17; Decl. of Miya King-Flaherty ¶¶ 5–21; Decl. of Catherine Collentine ¶¶ 4–7, 17; Decl. of Tomás Rebecchi ¶¶ 4–6, 8; Decl. of Barbara Vasquez ¶¶ 4–8; Decl. of Jeremy Nichols¶¶ 19–21; Decl. of Kendra Pinto ¶¶2, 16–18; Decl. of Natasha Léger ¶¶ 11, 13, 15; Decl. of Taylor McKinnon ¶¶ 3, 7, 8; Decl. of Wade Sikorski ¶¶ 11, 14; Decl. of Derf Johnson ¶¶ 8, 10, 11.

[5] Molvar Decl. ¶ 8.

[6] Templeton Decl. ¶¶ 8–9; Coppola Decl. ¶¶ 6, 13; Kirby Decl. ¶¶ 12, 16; Bloxham Decl. ¶¶ 6, 9, 21, 23; Stuble Decl. ¶¶ 7–9, 16–18; Weber Decl. ¶ 5; Waltermire Decl. ¶¶ 5–7, 11; Williams Decl. ¶ 8; Molvar Decl. ¶¶ 19–22; Hart Decl. ¶¶ 3–4, 11, 16; Wilburt Decl. ¶¶ 18–22; King-Flaherty Decl. ¶¶ 24–25; Collentine Decl. ¶¶ 8–16; Decl. of Mitch Jones ¶¶ 5, 6, 10; Vasquez Decl. ¶ 13; Nichols Decl. ¶¶ 8–10, 14; Pinto Decl. ¶¶ 5–7, 9; Léger Decl. ¶¶ 6–8; McKinnon Decl. ¶¶ 15–18; Johnson Decl. ¶¶ 6–7.

### C. The Conservation Groups' Interests May Be Impaired as a Result of This Litigation.

The impairment element of Rule 24(a) requires a showing that the litigation "may, as a practical matter, impair or impede the movant's interest." *WildEarth Guardians*, 604 F.3d at 1198. This is a "minimal burden" and requires the movant to show "only that impairment of its substantial legal interest is possible if intervention is denied." *Id.* at 1199.

The relief WEA seeks here has the potential to impair the Conservation Groups' interests. An order from this Court forcing BLM to offer oil and gas leases every three months, or otherwise limiting BLM's discretion to determine the timing and scope of lease sales, would undermine BLM's ability to manage public lands in an environmentally responsible manner that protects the Conservation Groups' interests.[7] Even relief simply requiring BLM to conduct the administrative processes for quarterly lease sales—irrespective of whether leases are offered or issued—would harm the Conservation Groups' interests by demanding additional resources for engagement in those processes.[8] These possibilities satisfy Rule 24(a)'s impairment prong. *See WEA v. Zinke*, 877 F.3d at 1167–68; *see also Utah Ass'n of Cntys.*, 255 F.3d at 1253–54.

In short, just as the Court found in the 2021 Case, "the relief sought by Petitioners would directly impact [the Conservation Groups'] interests." 2021 MTI Order, at 3.

---

[7] Templeton Decl. ¶¶ 10–12; Coppola Decl. ¶ 16; Kirby Decl. ¶¶ 13, 16, 18–19; Bloxham Decl. ¶¶ 18–24; Stuble Decl. ¶¶ 23–24; Weber Decl. ¶¶ 8–11; Waltermire Decl. ¶¶ 9–10; Williams Decl. ¶¶ 9–10; Molvar Decl. ¶¶ 23–27; Hart Decl. ¶¶ 13–15; Wilburt Decl. ¶ 20; King-Flaherty Decl. ¶¶ 26–28; Collentine Decl. ¶ 17; Rebecchi Decl. ¶ 8; Jones Decl. ¶¶ 14–15; Nichols Decl. ¶¶ 17–19; Pinto Decl. ¶ 14; Léger Decl. ¶¶ 6, 17; McKinnon Decl. ¶ 25; Sikorski Decl. ¶¶ 14, 17; Johnson Decl. ¶ 16.

[8] Templeton Decl. ¶ 12; Coppola Decl. ¶ 16; Kirby Decl. ¶ 19; Bloxham Decl. ¶ 23; Stuble Decl. ¶ 17; Waltermire Decl. ¶¶ 7, 11; Molvar Decl. ¶ 19; Hart Decl. ¶ 15; Collentine Decl. ¶¶ 8–9; Sorenson Decl. ¶ 7, Johnson Decl. ¶ 15.

**D. No Existing Party Adequately Represents the Conservation Groups' Interests.**

The final requirement to intervene as of right under Rule 24(a) is "satisfied if the applicant shows that [existing parties'] representation of [its] interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Like the impairment prong, this is a "minimal burden." *WildEarth Guardians*, 604 F.3d at 1200. In fact, the Tenth Circuit "ha[s] repeatedly recognized that it is 'on its face impossible' for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor." *Id.* (quoting *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002)). That is because, generally, "the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Utah Ass'n of Cntys.*, 255 F.3d at 1256. Thus, "[w]here a government agency may be placed in the position of defending both public and private interests, the burden of showing inadequacy of representation is satisfied." *WildEarth Guardians*, 604 F.3d at 1200.

That is the case here. BLM manages public lands under a "multiple use" mandate on behalf of all "the American people," balancing a wide variety of interests, including, e.g., "range," "timber," and "mineral[]" interests. 43 U.S.C. § 1702(c). By contrast, the Conservation Groups have narrower environmental interests: protecting public lands, waters, and wildlife; abating the climate crisis; safeguarding cultural resources; and ensuring that any oil and gas leasing or permitting is vetted through a robust public-review process.[9] *See WEA v. Zinke*, 877

---

[9] *See* Templeton Decl. ¶¶ 2–3; Coppola Decl. ¶ 6; Kirby Decl. ¶ 5; Bloxham Decl. ¶ 3; Stuble Decl. ¶ 3; Weber Decl. ¶ 5; Waltermire Decl. ¶¶ 2, 4; Williams Decl. ¶¶ 2–3; Molvar Decl. ¶¶ 2–3; Hart Decl. ¶ 3; Wilburt Decl. ¶ 5; King-Flaherty Decl. ¶¶ 3–4; Collentine Decl. ¶ 3; Rebecchi Decl. ¶ 9; Jones Decl. ¶¶ 6, 7, 13, 16; Vasquez Decl. ¶ 14; Sorenson Decl. ¶¶ 4–7; Anderson Decl. ¶¶ 5–7, 9; Nichols Decl. ¶¶ 23–24; Pinto Decl. ¶ 20; Léger Decl. ¶ 17; McKinnon Decl. ¶¶ 12–15, 22; Sikorski Decl. ¶¶ 13, 15, 17; Johnson Decl. ¶¶ 5, 15, 16.

F.3d at 1169 (finding representation inadequate because "BLM has multiple objectives in managing oil and gas leasing [and] is required to balance wide-ranging and often conflicting interests.").

These divergent interests are illustrated by numerous BLM decisions that have compromised the Conservation Groups' interests in favor of oil and gas development. For example, a Conservation Group member hikes and camps in Wyoming's Big Sandy Foothills and other BLM-managed land open to oil and gas leasing, and BLM issued lease parcels on those lands that inhibit her continued recreation there.[10]  Similarly, a Conservation Group member experiences increased haze and air pollution in Rocky Mountain National Park due to BLM's issuance of leases and drilling permits on surrounding lands.[11]  Many of the Conservation Groups, in fact, have been forced to protect their interests by litigating against BLM oil and gas approvals.[12]  This history demonstrates a likelihood of inadequate representation. *See Coalition*, 100 F.3d at 844–45 (finding burden met where government "has an interest adverse to the applicant [or] failed in fulfilling [its] duty to represent the applicant's interest").

In short, "[w]e have here the familiar situation in which the governmental agency is seeking to protect not only the interest of the public but also the private interest of the petitioners in intervention, a task which is on its face impossible." *Id.* at 845 (quoting *Nat'l Farm Lines v. ICC*, 564 F.2d 381, 384 (10th Cir. 1977)); s*ee also Utah Ass'n of Cntys.*, 255 F.3d at 1255.

---

[10] Stuble Decl. ¶¶ 19–20.

[11] Coppola Decl. ¶¶ 10–16.

[12] Templeton Decl. ¶ 9; Bloxham Decl. ¶¶ 6–7; Stuble Decl. ¶ 18; Molvar Decl. ¶¶ 19, 21; Hart Decl. ¶¶ 11, 16; Wilburt Decl. ¶¶ 21–22; King-Flaherty Decl. ¶ 24; Collentine Decl. ¶¶ 10–12, 14–15; Jones Decl. ¶¶ 5, 10; Vasquez Decl. ¶¶ 3, 13-14; Sorenson Decl. ¶ 4; Anderson Decl. ¶ 6; Nichols Decl. ¶¶ 9, 10, 13; Pinto Decl. ¶¶ 4–7, Léger Decl. ¶¶ 6, 7, 10; McKinnon Decl. ¶¶ 5, 10, 15–18; Johnson Decl. ¶ 6.

9

Because all four requirements of Rule 24(a) are satisfied, the Court should grant the Conservation Groups' motion to intervene as of right.

## II. Alternatively, the Court Should Grant the Conservation Groups Permissive Intervention.

The Conservation Groups also satisfy the requirements for permissive intervention, which is appropriate where the movant demonstrates: (1) it has a claim or defense that shares a common question of law or fact with the main action; (2) the intervention will not cause undue delay or prejudice; and (3) the motion to intervene is timely.  Fed. R. Civ. P. 24(b).  Courts also consider whether the intervenor will "significantly contribute to the underlying factual and legal issues."  *Utah v. Kennecott Corp.*, 801 F. Supp. 553, 572 (D. Utah 1992).

Here, the Conservation Groups intend to address in depth the questions of law and fact that are at the heart of this litigation: BLM's discretion over the timing and scope of oil and gas lease sales.  In addition, as noted, this motion to intervene is timely, and intervention will not cause undue delay or prejudice to the existing parties.  As such, if the Court does not grant intervention as of right, permissive intervention is warranted.

## CONCLUSION

For the foregoing reasons, the Court should grant the Conservation Groups intervention as a matter of right under Rule 24(a) or, alternatively, permissively under Rule 24(b).  A proposed order is attached.  No Answer is required under Local Rule 83.6.

Respectfully submitted February 8, 2023.

                                     */s/ Shannon Anderson*
                                     Shannon Anderson (Wyo. Bar No. 6-4402)
                                     Powder River Basin Resource Council
                                     934 N. Main St.,
                                     Sheridan, WY 82801

(307) 672-5809
sanderson@powderriverbasin.org

*Local Counsel*

*/s/ Melissa Hornbein*
Melissa Hornbein (*pro hac vice* pending)
Western Environmental Law Center
103 Reader's Alley
Helena, MT 59601
(406) 708-3058
hornbein@westernlaw.org

*/s/ Rose Rushing*
Rose Rushing (*pro hac vice* pending)
Western Environmental Law Center
208 Paseo del Pueblo Sur, Unit 602
Taos, NM 87571
(505) 278-9577
rushing@westernlaw.org

*/s/ Kyle Tisdel*
Kyle Tisdel (*pro hac vice* pending)
Western Environmental Law Center
208 Paseo del Pueblo Sur, Unit 602
Taos, NM 87571
(575) 613-8050
tisdel@westernlaw.org

*Counsel for Center for Biological Diversity, Citizens for a Healthy Community, Diné Citizens Against Ruining Our Environment, Food & Water Watch, Montana Environmental Information Center, Powder River Basin Resource Council, Western Organization of Resource Councils, WildEarth Guardians*


*/s/ Michael Freeman*
Michael Freeman (*pro hac vice* pending)
Earthjustice
633 17th Street, Suite 1600
Denver, CO  80202
(303) 996-9615
mfreeman@earthjustice.org

*/s/ Thomas Delehanty*
Thomas Delehanty (*pro hac vice* pending)
Earthjustice
633 17th Street, Suite 1600
Denver, CO  80202
(303) 996-9628
tdelehanty@earthjustice.org

*Counsel for Friends of the Earth, National Parks Conservation Association, Sierra Club, Southern Utah Wilderness Alliance, The Wilderness Society, Valley Organic Growers Association, Western Colorado Alliance, Western Watersheds Project, Wilderness Workshop*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on February 8, 2023, I electronically filed the foregoing CONSERVATION GROUPS' MOTION TO INTERVENE with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to other participants in this case.

*/s/ Shannon Anderson*
Powder River Basin Resource Council
*Local Counsel for Proposed Intervenor-Respondents*